1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ABE WILLIAMS,

11           Plaintiff,                 No. CIV S-02-0864 MCE GGH P

12      vs.

13   ARNOLD SCHWARZENEGGER,
     et al.,                            ORDER &
14
             Defendants.                FINDINGS AND RECOMMENDATIONS
15   _____/

16   Introduction

17           Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.   Pending before the court are: 1) plaintiff's motion to compel discovery, filed on

19   September 27, 2005, to which defendants filed their opposition on October 24, 2005; plaintiff

20   filed a reply on December 2, 2005, for which he had been granted an extension of time;[1]  2)

21   defendants' motion for summary judgment, filed on October 14, 2005; plaintiff filed his

22   opposition, on November 21, 2005, having been granted an extension of time by Order, filed on

23   November 16, 2005.[2]

24   _____

25           [1] See Order, filed on November 16, 2005, p. 3.

26           [2] In that order, the court noted that plaintiff had also sought, inter alia, an extension of
     time to complete discovery prior to any ruling on the summary judgment motion.  Plaintiff was

                                            1

1  Second Amended Complaint

2            This action proceeds on a second amended complaint,[3] filed on April 18, 2005,

3  against defendants former Governor Gray Davis; former Chairperson of the Board of Prison

4  Terms and Parole (BPT) Carol Daley; former CDC[4] Director Alameida; former Warden Thomas

5  Carey of California State Prison (CSP)-Solano ; P. Paynter, Case Records Supervisor at CSP-

6  Solano; he sues the four former officials, as well as defendant Paynter, in their individual and

7  official capacities; plaintiff seeks declaratory relief, prospective injunctive relief and money

8  damages.  As to any claims for prospective injunctive relief, the court has previously substituted

9  in Arnold Schwarzenegger in his official capacity.  See Order, filed on April 1, 2004, n. 1.

10           Plaintiff sets forth two causes of action against the defendants.  He alleges first

11  that the defendants apply regulatory provisions in violation of his rights under the Fifth,

12  Fourteenth and Eighth Amendments to conflict with and "usurp" credit-reduction, paroling and

13  sentencing statutes.  He alleges that his constitutional due process and equal protection rights are

14  violated thereby and that he is subjected to cruel and unusual punishment.  Plaintiff contends that

15  Cal. Penal Code § 190 set two terms, a 15-year to life minimum term which requires reduction by

16  time-credits pursuant to the Determinate Sentencing Law (DSL) codified at Cal. Penal Code §

17  2930 et seq.  Plaintiff states that he was convicted of second degree murder and sentenced to a

18  ─────────────────────

19  informed that until the motion to compel was adjudicated, the court could not determine whether
   the motion for summary judgment should be continued, pursuant to Fed. R. Civ. P. 56(f), on the

20  basis that plaintiff had not been provided with particular responses or documents sought in
   discovery upon which his opposition could be based.  Plaintiff was instructed to set forth in his

21  opposition to the motion for summary judgment in an affidavit whether he was unable to present
   facts/evidence in opposition to the dispositive motion because he had yet to receive full discovery

22  responses and to indicate specifically what information he believed he needed to do so.  Plaintiff
   was cautioned that he should provide, to the extent that he was able, a substantive opposition

23  because if the undersigned were to determine that the discovery responses sought would not be
   material or relevant to any opposition, the motion for summary judgment would not be

24  continued.  See, Order, filed on 11/16/05, pp. 1-2.

25           [3] This action was originally filed on April 23, 2002.

26           [4] The California Department of Corrections has since been renamed California
   Department of Corrections and Rehabilitation (CDCR).

term of 15 years to life, plus three one-year consecutive enhancements for a total of 18 years to life.  Plaintiff was to first serve his DSL sentence with half-time credit reductions per Cal. Penal Code § 2933 and then to serve the Indeterminate Sentence Law (ISL) with mandatory credit reduction off the 15-year minimum term under Cal. Penal Code §§ 190, 2931, and 2932(e). Second Amended Complaint (SAC), pp. 4-6.

Since March, 1987, plaintiff has received a total of six Credit Computation Forms, also known as Legal Status Sheets (LSS), setting forth his Minimum Eligible Parole Date (MEPD), which fluctuated with each subsequent LSS form based on time-credit gain and loss calculations, and his Maximum Eligible Parole Date (MxEPD), which always remained April 18, 2001.  In 1996, the CDC no longer provided updated LSS forms as required by Cal. Penal Code § 2932(e).  Exhibit A contains copies of plaintiff's LSS forms, all but one of which lists his MxEPD as 4/18/01, one notes the date as 4/21/01.  Plaintiff believed, based on the representation of BPT and CDC officials and on his not having received an ISL term without possibility of parole, that 4/18/01 was the latest date on which he must be paroled.  SAC, pp. 6-7.

On July 31, 1996, plaintiff was denial parole at his first parole suitability hearing for three years.  On September 21, 1999, at his first subsequent parole suitability hearing, he was issued a two-year denial.  When plaintiff reached April 18, 2001, his MxEPD, he filed an administrative appeal claiming to have been denied proper application of mandatory time credits. At his March 19, 2002, term computation review hearing, plaintiff told defendant Paynter that BPT and CDC were not in compliance with the sentencing, credit reduction mandates and parole statutes, pursuant to Cal. Penal Code §§ 190, 2931, 2932(e), 3000, and 3000(a).  Defendant Paynter denied plaintiff's appeal, citing the Penal Code and the California Code of Regulations (CCR) and telling plaintiff that as an ISL inmate pursuant to Cal. Penal Code § 3040 et seq, particularly § 3041, that the BPT had sole authority over the application of time credits and when/if to allow parole.  Exhibit B contains copies of the Term Computation Hearing Notification, and the related administrative appeal decisions.  SAC, pp. 7-8.

1    Plaintiff told defendant Paynter that Cal. Penal Code § 3000(a) superseded any

2  powers granted to BPT and Cal. Penal Code § 2931 credit reductions; that § 3000 applied to both

3  § 1168 ISL and § 1170 DSL prisoners; and that BPT's powers under Cal. Penal Code § 3040

4  were subordinated to the requirements of § 3000.  Defendant Paynter again denied plaintiff's

5  appeal and informed him that the Maximum Eligible Parole Date was meaningless terminology

6  used to calculate the maximum credits to be allowed.  Plaintiff's administrative appeals were all

7  denied.  SAC, pp. 8-9.

8    On February 7, 2002, plaintiff waived his second subsequent parole suitability

9  hearing (PSH) for a year to try to remove prejudicial and false information from his PSH report.

10  At his third subsequent PSH, he was denied parole for another year and was again denied parole

11  on May 13, 2004, at his fourth subsequent PSH for a year.  At the time of filing his second

12  amended complaint, he was due to appear, in May, 2005, for a fifth PSH.  SAC, p. 9.

13    Plaintiff claims that defendant Davis' "no-parole or almost-no-parole policies" led

14  to the manner in which defendants applied the BPT and CDC regulations violating his

15  constitutional rights; that defendant Daley enforced Davis' policies by the manner in which

16  parole procedures were unlawfully applied by employees; and that defendant Alameida enforced

17  Davis' policies by the way CDC and its employees did not comply with state law mandates and

18  the federal constitution in applying time-credit reductions.  SAC, pp. 9-10.

19    Plaintiff informed BPT PSH officials at his 2003 and 2004 hearings that they were

20  misapplying sentencing, credit-reduction and parole statutes and that their use of regulatory

21  provisions, CAL. CODE REGS. tit.xv, §§ 2400-2411, especially use of the matrix violated his liberty

22  interest in parole to no avail; he alleges that each defendant acted personally in their individual

23  capacities to deprive him of his liberty interest and his vested right to constitutionally valid

24  parole procedures.  SAC, p. 10.

25    As his second cause of action, plaintiff alleges the violation of the same

26  constitutional provisions as above, claiming the right to have parole decisions based on valid

4

parole procedures implemented pursuant to Cal. Penal Code § 3041.  Particularly, he is entitled

to parole procedures that distinguish ISL prisoners sentenced to life without the possibility of

parole from those sentenced with that possibility, and distinguishing those convicted of first

degree murder from those convicted of murder in the second degree.  Plaintiff alleges that

defendants acted with deliberate indifference in denying him parole.  He alleges that he was

denied parole at all of his suitability hearings for the same reasons: a) the conviction offense; b) a

lack of sufficient participation in vocational and self-help programs (dropped only at the 2004

PSH); c) prior criminal history (although completely non-violent).  SAC, pp. 11-14.

Plaintiff alleges that BPT officials relied only on Cal. Penal Code § 3041(b) to the

exclusion of Cal. Penal Code(a).  He alleges that under § 3041(a), officials are required to weight

second degree murders, denying parole solely based on the crime under § 3041(b) only if the

crime is particularly egregious.  He alleges that his parole suitability hearings were held several

months late in 1996, 1999, 2002, and 2004, in violation of Cal. Penal Code §§ 3041(a) and

3041.5(b) and the California Code of Regulations.  Plaintiff claims that all defendants, as a result

of defendant Davis' policies violated his constitutional rights.   SAC, pp. 14-16.

Plaintiff asks, inter alia, that the court declare that Cal. Penal Code § 190

mandates credits to be reduced in the same way as any other DSL term is reduced pursuant to

Cal. Penal Code § 2930 et seq.; that Cal. Penal Code § 3000 applies to both DSL and ISL

prisoners.  He asks the court to enjoin the BPT (BPH) to comply with Cal. Penal Code § 190's

unique credit reduction scheme and with Cal. Penal Code § 3000(a) and that the Board be

required to make up for the 17-month delay plaintiff experienced cumulatively before prior

parole suitability hearings by scheduling a new hearing immediately.  Plaintiff also seeks

compensatory and punitive damages.  SAC, pp. 17-20.

Motion to Compel

Plaintiff brings a motion to compel, contending that defendants have failed to

fully respond to his discovery requests.  To the extent plaintiff seeks further discovery to

1    demonstrate that defendant Davis enforced an unconstitutional "no-parole" policy during his

2    administration, because Judge Karlton has already found that a no-parole-for-murderers policy

3    existed under defendant Gov. Davis , discovery in support of this position is unnecessary.  See

4    Coleman v. Board of Prison Terms, CIV-S 96-0783 LKK PAN P,[5] currently on appeal to the

5    Ninth Circuit.

6          Moreover, assuming defendant Davis had a no-parole policy, plaintiff does not

7    allege that defendant Schwarzenegger does.  As to defendant Davis, the court takes judicial

8    notice[6] of Williams v. Knowles, Case No. Civ. 03-0919 LKK GGH P, wherein plaintiff Williams

9    in the instant matter, as petitioner in a habeas petition, challenged the 1999 parole decision, and

10   by way of a supplemental petition challenged the 2001 decision, of the BPT finding petitioner

11   unsuitable for parole.   It was found therein that plaintiff, as petitioner, did not suffer from the

12   parole (or no-parole) policy and was not entitled to parole.  See Findings and Recommendations,

13   Case No. Civ. 03-0919 LKK GGH P, filed on July 6, 2006, and adopted by Order, filed on

14   August 25, 2006 (and discussion below).  The motion as to defendant Davis will be denied.

15         To the extent plaintiff seeks discovery from any defendant to support plaintiff's

16   interpretation of the appropriate application of Cal. Penal Code § 190, and to identify the

17   participation of any defendant in the denial of his administrative appeals, including the appeal

18   regarding his credit computation review, such further discovery is unnecessary in light of the

19   discussion set forth below.  Plaintiff's motion to compel discovery regarding these claims will be

20   denied.

21   \\\\\

22

23        [5] Findings and Recommendations, filed on December 22, 2004, adopted by Order in
     Coleman v. BPT, CIV-S 96-0783 LKK PAN P, filed on May 20, 2005; amended Order,  filed on
24   December 2, 2005, and judgment thereon entered.

25        [6] A court may take judicial notice of court records.  See Barron v. Reich, 13 F.3d 1370,
     1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United
26   States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

1    Motion for Summary Judgment

2              Defendants Davis, Daley, Carey, Alameida and Paynter move for summary

3    judgment on the grounds that: 1) the second amended complaint is barred by the Eleventh

4    Amendment because this federal court is asked to enforce state law; 2) the second amended

5    complaint fails to state a claim upon which relief can be granted because plaintiff had no liberty

6    interest in parole; 3) even if plaintiff's complaint is properly before the Court, his claims based

7    on his erroneous interpretation of state law are without merit; 4) defendants Davis, Daley, Carey

8    and Alameida were not personally involved in any violation of plaintiff's rights; 5) plaintiff has

9    no cause of action against defendant Paynter because she simply answered his appeal and no

10   liability can be predicated on the handling of the appeal.  Motion for Summary Judgment (MSJ),

11   pp. 1-2.

12              *Legal Standard for Summary Judgment*

13              Summary judgment is appropriate when it is demonstrated that the standard set

14   forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

15   there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

16   as a matter of law."  Fed. R. Civ. P. 56(c).

17              Under summary judgment practice, the moving party

18              always bears the initial responsibility of informing the district court
             of the basis for its motion, and identifying those portions of "the
19           pleadings, depositions, answers to interrogatories, and admissions
             on file, together with the affidavits, if any," which it believes
20           demonstrate the absence of a genuine issue of material fact.

21   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

22   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

23   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

24   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

25   after adequate time for discovery and upon motion, against a party who fails to make a showing

26   sufficient to establish the existence of an element essential to that party's case, and on which that

1   party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

2   failure of proof concerning an essential element of the nonmoving party's case necessarily

3   renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

4   granted, "so long as whatever is before the district court demonstrates that the standard for entry

5   of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

6          If the moving party meets its initial responsibility, the burden then shifts to the

7   opposing party to establish that a genuine issue as to any material fact actually does exist.

8   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356

9   (1986). If the moving party meets its initial responsibility, the burden then shifts to the opposing

10  party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

11  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  In

12  attempting to establish the existence of this factual dispute, the opposing party may not rely upon

13  the allegations or denials of its pleadings but is required to tender evidence of specific facts in the

14  form of affidavits, and/or admissible discovery material, in support of its contention that the

15  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n.

16  11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact

17  might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

18  Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec.

19  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

20  evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool

21  v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

22         In the endeavor to establish the existence of a factual dispute, the opposing party

23  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

24  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

25  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

26  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

1   genuine need for trial.'"   Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

2   56(e) advisory committee's note on 1963 amendments).

3            In resolving the summary judgment motion, the court examines the pleadings,

4   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

6   477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

7   placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

8   at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

9   opposing party's obligation to produce a factual predicate from which the inference may be

10  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

11  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

12  party "must do more than simply show that there is some metaphysical doubt as to the material

13  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

14  nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct.

15  1356 (citation omitted).

16           On December 10, 2002, the court advised plaintiff of the requirements for

17  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

18  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and

19  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

20                         *Undisputed Facts*

21           A number of facts are not in dispute.  On November 7, 1978, California's

22  voters approved a proposition increasing the sentence for second degree murder to 15 years to

23  life.  Defendants' Statement of Undisputed Material Facts (UMF) # 1.  California Penal Code §

24  190(e) provides that inmates serving a life term pursuant to that section cannot earn credits.

25  \\\\\

26  \\\\\

1  UMF # 2.[7]  In October 1986, plaintiff Williams was convicted of second degree murder and later

2  sentenced to a term of 15 years to life.  UMF # 4.  Plaintiff was placed in the custody of the

3  California Department of Corrections on January 21, 1987.  UMF # 5.  On July 31, 1996,

4  plaintiff was denied parole after an initial parole consideration hearing.  UMF # 6.  The denial

5  was for a period of three years.  UMF # 7.  On September 21, 1999, plaintiff was denied parole

6  for two years.  UMF # 8.  On April 18, 2001,[8] after plaintiff reached his maximum earliest parole

7  date, he was not paroled.  UMF # 9.  Plaintiff filed an administrative appeal claiming he had been

8  denied credits he should have received.  UMF # 10.[9]  On February 7, 2002, plaintiff waived a

9  parole consideration hearing. UMF # 11.  On March 19, 2002, defendant Paynter conducted a

10  Term Computation Review Hearing with plaintiff.  UMF # 12.  Paynter denied plaintiff's appeal,

11  informing him that the Board of Prison Terms has sole authority in regard to if and when an

12  inmate paroles.  UMF # 13.[10] Defendant Paynter also told plaintiff that the life maximum term is

13  controlling whenever an inmate is serving an indeterminate sentence.  UMF # 14.  Plaintiff

14  exhausted his appeal which was denied at all levels of appeal.  UMF # 15.  On February 6, 2003,

15  plaintiff was denied parole for one year.  UMF # 16.  On March 13, 2004, plaintiff was denied

16  parole for one year.  UMF # 17.  Plaintiff's initial parole consideration hearing was six months

17  late.  UMF # 19.  The September 21, 1999, hearing was two months late.  UMF # 20.  The

18  \\\\\

---

20  [7] Although plaintiff purports to dispute this, he also says that Cal. Penal Code § 190(e) should not be applied to him because to do so violates the Ex Post Facto Clause; therefore, the purported dispute as to what this subsection says appears disingenuous.

22  [8] Defendants had the date as April 18, 2000, but this is plainly a typographical error as the date has been repeatedly identified as April 18, 2001; plaintiff characterizes this date as his "maximum eligible parole date," rather than as his "maximum earliest parole date."  Plaintiff's Statement of Issues in Opp., plaintiff's dec. at ¶ 3.

24  [9] Plaintiff corrects the date of the appeal to December 10, 2001.

25  [10] Although plaintiff purports to dispute this statement, he is disagreeing with the substance of what defendant Paynter said and not with the fact that she said it; thus, as to this fact, there is no genuine dispute.

February 7, 2002, hearing was six months late.  UMF # 21.  The May 13, 2004, hearing was three

months late.  UMF # 22.

*Disputed Facts*

Plaintiff purports to dispute the following of defendants' Undisputed Facts: that

the California Court of Appeal, in In re Monigold, 139 Cal.App.3d 485, 491 (1983), held that

inmates serving life terms cannot earn good time credits; that the CDCR has no legal authority or

responsibility in regard to paroling inmates; that California inmates serving a life term are

eligible for credits only after they are found suitable for parole and receive a parole date; and that

defendant Carey did not sign plaintiff's appeal concerning credits and, as warden, had no

authority or responsibility with respect to the parole process (UMF #'s 2, 23-26).  See Opp.  As

to defendants' reference to a May, 2005, parole consideration hearing for plaintiff wherein

plaintiff was again denied parole (UMF # 18), plaintiff avers that his May, 2005, hearing was

postponed and held on October 13, 2005, whereupon plaintiff was granted a one-year waiver

pending the outcome of his federal habeas petition and civil rights action.  Opp., p. 7.

*Discussion*

Defendants' ground one, that plaintiff is barred by the Eleventh Amendment from

proceeding in this action because he asks this court to enforce state law, and two, that California

inmates have no liberty interest in parole, are without merit.  In Findings and Recommendations,

adjudicating defendants' motion to dismiss, the court stated the following as to defendants'

argument based on the Eleventh Amendment:

> Defendants argue that the complaint should be dismissed as barred
> by the Eleventh Amendment, contending that by his requested
> form of relief, plaintiff seeks to have a federal court  order a state
> official to follow state law.  MTD, pp. 7-8.  Defendants cite
> Pennhurst v. Haldeman, 465 U.S. 89, 106, 104 S.Ct. 900, 911
> (1984) ("it is difficult to think of a greater intrusion on state
> sovereignty than when a federal court instructs state officials on
> how to conform their conduct to state law").  While plaintiff does
> ask the court to require BPT and CDC to include only accurate
> information in his file and BPT reports, the gravamen of his claim
> is that without the court's intervention he will be denied his right to

1       due process with regard to his protected liberty interest in parole.
    The Ninth Circuit has recently established that a state prisoner does
2       have a constitutionally protected liberty interest in parole that vests
    in every inmate  upon his incarceration.  Biggs v. Terhune, ___
3       F.3d ___ 2003 WL 21488242, at *3 (9th Cir. (Cal.) Jun. 30  2003),
    citing McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002)
4       ("we hold that California's parole scheme gives rise to a protected
    liberty interest in release on parole").  As noted above, it is
5       possible for this court to fashion a form of relief in which plaintiff
    may receive more fair consideration at a future parole suitability
6       hearing.  Defendants' motion should be denied on this ground.

7   Findings and Recommendations, filed on July 22, 2003, p. 19, adopted by Order, filed on

8   September 30, 2003.  Although this action now proceeds on a second, rather than a first,

9   amended complaint, this finding is no less the law of the case.  Moreover, in granting plaintiff

10   leave to supplement his claims with respect to allegations of continued violations of due process,

11   the court again rejected defendants argument as to an Eleventh Amendment bar.  See Order, filed

12   on October 4, 2004, at p. 5.  In Williams v. Knowles, Case No. Civ. 03-0919 LKK GGH P, of

13   which this court has taken judicial notice, in Findings and Recommendations, therein filed on

14   July 6, 2006, at page 5, the undersigned noted that any argument that California inmates have no

15   liberty interest in parole has been foreclosed by McQuillion v. Duncan, 306 F.3d 895 (9th Cir.

16   2002) and Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003).  As noted, these Findings and

17   Recommendations were adopted by Order, filed on August 25, 2006.  Finally, on this issue, in

18   the just-decided case of Sass v. Board of Prison Terms, et al. , No. 05-16455, slip.op. at 10566,

19   10572 (9th Cir. Aug. 31, 2006), the Ninth Circuit specifically and unequivocally holds that

20   "California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal.

21   4th 1061 (2005)."  No more need be said on this point, and summary judgment for defendants on

22   grounds one and two should be denied.

23         However, finding a federal liberty interest does not mean that the federal courts

24   find every aspect of state law on the subject at issue part and parcel of the liberty interest.  The

25   federal liberty interest only requires that basic notions of due process apply to that interest.  Thus,

26   for example, in prisoner disciplinary proceedings, the federal liberty interest requires only that

1    certain procedural protections are employed.  See Wolff v. McDonnell, 418 U.S. 539, 560, 94 S.

2    Ct. 2963, 41 L. Ed. 2d 935 (1974).  The precise procedures utilized by California prison officials,

3    e.g., hearing within a specified number of days, assignment of an investigator, are not considered

4    part of the liberty interest.  See also Brittain v. Hansen, 451 F.3d 982, 995 (9th Cir. 2006): "In

5    line with these cases, we believe that states should be given flexibility in interpreting and

6    enforcing a right of their own creation."

> "[T]he touchstone of the inquiry into the existence of a protected,
> state-created liberty interest in avoiding restrictive conditions of
> confinement is not the language of regulations regarding those
> conditions but the nature of those conditions themselves 'in
> relation to the ordinary incidents of prison life.'"  Id., at 2394
> (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132
> L.Ed.2d 418 (1995)).

11   Wilkinson v. Austin, 545 U.S. 209, 125 S. Ct. 2384, 2394, (2005)[11]

12           Thus, the issue here is not whether a general liberty interest in parole exists, but

13   whether the calculation of credits utilized within the parole system themselves create a[nother]

14   liberty interest.  The parties have not briefed this issue, and the undersigned will not launch off

15   on his own unaided analysis in this case.  Because, even if the state law in these circumstances

---

[11]  The Ninth Circuit continues to struggle to define liberty interest in the prisoner
context.  At one time, the Supreme Court's Sandin opinion was believed to have curtailed use of
the substantive predicates/mandatory language test.

    The Supreme Court criticized and curtailed this methodology in Sandin v. Conner,
    515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In Sandin, the Court
    announced a new test to determine when state law creates a protected liberty
    interest in the prisoner context: "[T]hese interests will be generally limited to
    freedom from restraint which ... imposes atypical and significant hardship on the
    inmate in relation to the ordinary incidents of prison life." Id. at 484, 115 S.Ct.
    2293. Sandin's reasoning applied particularly to convicted prisoners, however,
    whose incarceration "serves different aims" than pre-trial detainees like Valdez.
Valdez v. Rosenbaum, 302 F.3d 1039, 1044 n.3 (9th Cir. 2002).

    But the use of the previous test has again crept back into determining liberty interests in
the convicted prisoner context.  "Despite the government's argument that Sandin v. Conner, 515
U.S. 472 (1995), eliminated the 'mandatory language' approach of Greenholtz and Allen, the
Supreme Court did not so hold and this court has consistently rejected this argument.  See, e.g.,
McQuillion, 306 F.3d at 903; Biggs, 334 F.3d at 914."  Sass v. California Bd. of Prison Terms,
supra, 2006 WL 2506393, *3.)  It is difficult for this writer to find that the Ninth Circuit case law
is completely faithful with respect to Supreme Court cases, which are difficult in themselves to
apply to a parole eligibility context.

1   does give rise to a liberty interest, the state law was not violated.  Defendants note that following

2   the 1978 voter approved proposition increasing the penalty for second degree murder to 15 years

3   to life, Cal. Penal Code § 190(e) was enacted to provide that inmates serving life terms were not

4   eligible for good time credits, which conformed with a California appellate court decision that

5   inmates serving life were not eligible to receive time credits either on their life terms or the

6   minimum portions of their term, citing In re Monigold, 139 Cal. App.3d 485, 491 (1983).  MSJ,

7   p. 3.  Defendants maintain that plaintiff is serving a term of 15 years to life and not a term of 15

8   years, which allows for second degree murderers to serve well beyond 15 years (citing In re

9   Dannenberg, 34 Cal. 4th 1061, 23 Cal. Rptr. 417, 442-443 (2005)); that Cal. Penal Code § 190, a

10  statute on which plaintiff relies contains a provision (§ 190(e)) that specifies that inmates serving

11  life terms are not entitled to credit in this state; that whether or not his hearings have been timely,

12  plaintiff has not been injured by any untimeliness.  MSJ, pp. 10-12.

13           In his opposition, plaintiff avers that Cal. Penal Code 190(e), which he contends

14  was enacted in 1998, should not be applied to him as he was arrested in 1984 (convicted in

15  1986), and only those penal code provisions in effect at the time of his arrest should affect him.

16  Opp., p. 5.  Cal. Penal Code 190(e) sets forth:

17           Article 2.5 (commencing with Section 2930...) shall not apply to
             reduce any minimum term of a sentence imposed pursuant to this
18           section.  A person sentenced pursuant to this section shall not be
             released on parole prior to serving the minimum term of
19           confinement prescribed by this section.

20  Plaintiff claims that the application of § 190(e) to his case violates the Ex Post Facto Clause.

21  Opp., pp. 5, 11, 15.  Plaintiff disputes the defendants' interpretation of In re Monigold, supra,

22  139 Cal. App. 3d 485 (1983), that Cal. Penal Code § 190 life prisoners are not eligible for credits

23  on their minimum terms, arguing that what Monigold actually holds is that § 190 prisoners

24  serving determinate and indeterminate sentences may receive credits and that Monigold and In re

25  Dayan, 231 Cal. App. 3d 184, 187 (1991), find credits applicable to life term inmates.  Opp., p. 5.

26  Plaintiff maintains that Cal. Penal Code § 190, as enacted between 1978 and 1998, was "unique

14

among California's indeterminate sentences, because it was the only indeterminate sentence that had mandatory credit reductions mandated to reduce § 190's minimum term of 15 years." Opp., p. 7. It is plaintiff's position that the "refusal to adopt the laws as enacted" precluded his being released on parole when his minimum term expired (by failing to apply mandatory credit reductions) and the defendants' policies deprived him of the proper application of the provisions of Cal. Penal Code §§ 190 and 3041. Opp., pp. 7, 12. He also contends that he has suffered from "a systemic lateness" in the holding of the parole suitability hearings that has further deprived him of due process. Opp., p. 11.

In Williams v. Knowles, Case No. Civ. S 03-0919 LKK GGH P, of which this court has taken judicial notice, the following claims were raised: 1) violation of Cal. Penal Code § 190; 2) violation of Cal. Penal Code § 3041; and 3) imposition of an illegal no-parole policy. See Findings and Recommendations, Case No. 03-0919, filed on July 6, 2006, pp. 1-14. A supplemental petition raising two other claims was also considered therein by the undersigned: 1) petitioner should have been released on parole on April 18, 2001, if the BPT had properly applied his time credits pursuant to Cal. Penal Code § 190; 2) petitioner was entitled to release on April 18, 2001, based on heightened expectations created by state officials over many years. See Findings and Recommendations, Case No. 03-0919, filed on July 6, 2006, pp. 15-20. As noted these Findings and Recommendations were adopted by Order, filed on August 25, 2006, and all of petitioner's claims in his petition were denied.

The court now incorporates its findings in Case No. CIV S 03-0919 LKK GGH P herein with respect to plaintiff's claims that defendants have violated state law by failing to properly award him credits such that he should have been released by his maximum eligible parole date of April 18, 2001, and that he has been subjected to an unconstitutional "no-parole policy."

> [P]etitioner alleges that the BPT improperly denied him credits to
> which he was entitled pursuant to Cal. Penal Code § 190. In 1978,
> California Penal Code § 190 was amended, in relevant part, to

provide that inmates sentenced to 15 years to life for second degree murder were eligible to earn conduct credits toward their sentences.  In re Oluwa, 207 Cal. App.3d 439, 442, 255 Cal. Rptr. 35 (1989).  In the third amended petition, petitioner argued that had the BPT properly awarded these credits, he should have been released no later than his "maximum eligible parole date" of April 18, 2001.  Third Amended Petition, p. 3.  By maximum eligible parole date, petitioner is apparently referring to his three year determinate sentence combined with the fifteen year sentence (minus the life term) for his murder conviction without application of any credit reduction.

In his traverse, petitioner expands on this claim:

> Therefore, petitioner contends he has liberty interest credits and parole, derived from the following statutes: PC §§ 190, 2931, 2932(e) and most particularly 3000. These statutes, jointly and separately, limit the paroling discretion of the Board as it pertains to PC § 190 prisoners and their initial parole release dates.  As noted, these code sections limit the Board to paroling § 190 prisoners between their MEPD and their Max-MEPD at the expiration of their minimum terms.  Once the Board fails to release by the expiration of the minimum-term, the Board loses jurisdiction over releasing on the "initial" parole and only the courts or CDC has the authority to release the prisoner.  However, the Board does not lose jurisdiction over the § 190 prisoner, and once the prisoner is released by the courts or CDC, the Board maintains all its powers pursuant to PC § 3040 et seq.

.......................................................................

Respondent ... argues that petitioner's claim alleging a violation of § 190 alleges a violation of state law only.  The court finds that petitioner is challenging the interpretation and application of state law as it applies to his sentence.  By finding that the state courts have ruled on petitioner's claims concerning the interpretation and application of state sentencing law, it necessarily follows that the alleged improper application of state law is not subject to review by federal court.  Lewis v. Jeffers, 497 U.S. 764, 110 S. Ct. 3092, 2102 (1990).

Petitioner is, in essence, urging a new interpretation of state law. [] This court must defer to a state court's interpretation of its own laws unless that interpretation is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989).  While petitioner urges his own interpretation of state law, this court finds that the interpretation of the at-issue state law by the California courts is neither untenable nor a subterfuge to avoid federal review.  Accordingly, this claim should be denied on this ground.

The court makes the following observations about petitioner's claim. First, petitioner was sentenced to fifteen years to life. His maximum term is life in prison and he has not been kept in beyond the end of that term. Petitioner has apparently confused the minimum term necessary to be served before parole could be implemented at its earliest, the minimum eligible parole date (MEPD) with a determinate sentence of fifteen years. Indeed, the BPT is not required to find petitioner even eligible for a parole setting within fifteen years. Petitioner could spend the rest of his life in prison without ever becoming eligible for parole.

Second, the court notes that under California law, petitioner is no longer entitled to earn credits toward his release date. In In re Dayan, 231 Cal. App. 3d 184, 282 Cal. Rptr. 269 (1991), the petitioner, serving a sentence of fifteen years to life for second degree murder, alleged that he was entitled to application of good behavior credits toward his statutory minimum term of fifteen years and toward his actual term set by the Board of Prison Terms (BPT). The California Court of Appeal found that Cal. Penal Code § 190(a) mandates application of good behavior credits by the CDC against the minimum term for second degree murder (fifteen years) imposed by statute for purposes of establishing the MEPD. Id. at 188, 282 Cal. Rptr. at 271. However, nothing in the statute requires the BPT to reapply the same credits to the actual term it sets. Id., 282 Cal. Rptr. at 271. Thus, theoretically, if a prisoner were determined to be parole eligible at the earliest possible time, credits might be of some use in actually reducing the absolute minimum time to be served before release on parole. See People v. Rowland, 134 Cal. App.3d 1, 13-14, 184 Cal. Rptr. 346, 352 (1982). However, if a prisoner's incarceration time passes his MEPD, and he has yet to be found *eligible for parole,* computation of time credits is meaningless – he will be released if and when found eligible, and then only after a computation of a release date under BPT matrices.

In the instant case, petitioner has already passed his MEPD without any finding of parole eligibility. Amended Petition, Exhibit G; Respondent's Exhibit 1, p. 1. Pursuant to Dayan, petitioner is no longer entitled to any credit reduction. To the extent petitioner is claiming that the BPT (or CDC) has failed to award him credits, this claim is without merit.

.....................................................................................................

*Violation of Cal. Penal Code § 3041*

Petitioner argues that Cal. Penal Code § 3041 requires the BPT to give him a parole date. Section 3041 provides that one year prior to the inmate's minimum eligible parole release date a panel consisting of at least two commissioners of the BPT shall meet with the inmate and *shall normally* set a parole release date.

Petitioner appears to argue that because § 3041 provides that the BPT shall normally set parole release dates, the BPT violated due process by failing to set his parole release date.

California's parole scheme gives rise to a cognizable liberty interest in release on parole.  Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003).  "In the parole context, the requirements of due process are met if 'some evidence' supports the decision."  Id.  If there is not some evidence to support a decision denying parole, due process is violated.  Therefore, even though California law states that the BPT shall normally set parole release dates, due process does not require the BPT to state a date where some evidence exists demonstrating that petitioner should not be paroled.  As will be discussed infra, some evidence existed to support the 1999 decision finding petitioner unsuitable for parole.  Accordingly, petitioner's claim that the BPT was required to set his parole release date pursuant to Cal. Penal Code § 3041 is without merit.

............................................................................

*No-Parole Policy*

Petitioner argues that he has been denied parole pursuant to a no-parole policy.  In support of this claim, petitioner cites Coleman v. Board of Prison Terms, CIV S-96-0783 LKK PAN P.  In Coleman, the Honorable Lawrence K. Karlton found that under Governors Wilson and Davis, the BPT disregarded regulations ensuring fair suitability hearings and instead operated under a sub rosa policy that all murderers be found unsuitable for parole.  See December 22, 2004, findings and recommendations, adopted by the district court on December 2, 2005.

Petitioner's assertion of a "no parole" policy in 1999 raises profoundly complex issues in light of the Findings and Recommendations/Order of Adoption/Judgment in Coleman v. Board of Prison Terms, CIV-S-96-0783 LKK PAN P, appeal pending.  In Coleman, the court found that a no parole policy was in effect for California "lifers" in 1999 which infected Coleman's BPT proceeding in 1999.  Coleman rejected the BPT's "so what" assertion that the presence of some evidence would ameliorate the policy because Coleman properly found a biased decision maker to be structural error not susceptible to a harmless error standard.  The remedy in Coleman required that petitioner be given a new hearing before an unbiased panel of BPT commissioners.

Complex issues abound insofar as Coleman is urged by petitioner as applicable to his 1999 BPT hearing.  Some of those issues are as follows: (1) was the holding in Coleman applicable to *all* BPT panels or just the panel at issue in Coleman; (2) how does one reconcile state court holdings contrary to Coleman ,which are also

entitled to res judicata/collateral estoppel effect in federal court; (3) did petitioner waive his objection to a no parole policy occasioned by biased BPT panel members when he expressly "temporarily" waived his bias objection when proceeding before the panel; (4) what is the effect of Coleman in this case where the BPT commissioners *expressly* disavowed that any "no parole" policy would motivate their decision.  There may be other issues upon further reflection.  However, in this case the complexity of the trees (issues) admit to a rather easy decision in respect to the forest – which has the effect of mooting the "no parole" policy issue.  The solution hinges upon the appropriate remedy even if the petition were to be granted in this case on the "no parole" policy.

In Coleman, the appropriate remedy given was an order that Coleman receive a hearing before unbiased commissioners.  As Judge Karlton noted in a follow-up order in Coleman when denying petitioner's request for immediate release, the fact that Coleman had a hearing in 2005 more or less obviated the structural error found for the 1999 hearing.  That is, Judge Karlton found that no evidence had been presented to suggest that the 2005 BPT panel was affected by a no parole policy.  In late 2004, a new Governor had been elected in the latter part of 2004 for whom the record was silent with respect to an enunciated "no parole" policy.  Petitioner had received, in effect, the remedy ordered by the initial decision – a hearing from a panel unaffected by the found "no parole" policy – or at least there was no evidence to suggest that the 2005 panel was biased.

In this case, as far as the record demonstrates, petitioner had parole eligibility hearings in 2002, 2003, and 2004.  It is highly likely that petitioner has had another eligibility hearing by 2006, or he will very shortly have one.  There is no indication that any 2006 panel would be affected by a historical "no parole" policy assertedly instituted by two previous governors.  Thus, the only remedy to be ordered here based on a "no parole" policy in 1999 is for petitioner to have another parole eligibility hearing in 2006 or 2007 (whenever this case reached finality).  In all likelihood, the regularly recurring BPT hearing would take place (if it has not taken place already) prior to the time this case reached any finality.  The "no parole" policy issue would certainly be moot by that time, if it is not moot already.

Petitioner does not desire another hearing; he wants the court to simply order a parole date on account of the "no parole" policy.  Petitioner discounts the ability of the BPT, or presumably the court as well, to ever find that "some evidence" to warrant eligibility denial is not present.  Petitioner specifically states: "Of course, there was some evidence to support the denial; and, there will always be some evidence under California law."  Traverse at 31.  However, the undersigned disagrees.  One cannot both embrace the liberty interest created by the California parole eligibility statute,

19

the cornerstone of which is "some evidence" must exist if parole eligibility is denied, see Biggs, supra, and also disclaim that cornerstone as having any applicability.  Federal law recognizes the liberty interest created by state law, and it is *federal* law which defines the process which is due.  That process includes a provision that parole eligibility may be denied if there exists "some evidence" of the factors categorized as making one unsuitable for parole.

Moreover, in practice petitioner's point is not well taken.  The undersigned, Judge Karlton, and other courts have found a lack of "some evidence" in several cases.  See e.g., Irons v. Warden etc., 358 F. Supp. 2d 936 (E.D. Cal. 2005).  In that case, the undersigned found that continuing and undue reliance on unchanging factors, such as the seriousness of the crime, could not constitute "some evidence."  Because in that case, no other evidence could warrant a denial of parole, the court ordered the computation of a parole date.

Findings and Recommendations, Case No. 03-919, filed on July 6, 2006, pp. 5-10.

The undersigned, after analysis of the circumstances of the denial of petitioner's parole eligibility, found that "some evidence" did support the BPT's parole eligibility denial. See, id., pp. 10-14.  This court also found that petitioner, plaintiff herein, was not entitled to parole release by no later than April 18, 2001, the putative maximum eligible parole date based on any "heightened expectation of parole release created by state officials over many years," id., p. 19, which is another of the claims posited by plaintiff against defendants herein:

Petitioner claims that soon after entering prison, he was told by members of a classification committee that he could expect to serve roughly between ten and fifteen years on his sentence of fifteen years to life.  Petitioner claims that BPT officials later told him the same thing.

Petitioner's claim that prison and BPT officials misled him to believe that he would be released no later than his "maximum eligible parole date" does not state a federal claim.

Id.

Defendants are entitled to summary judgment in this civil rights action because plaintiff has erroneously interpreted state law in an attempt to frame allegations of violations of federal constitutional due process.  Because plaintiff's allegations rest on his persistent but

1  erroneous interpretations of state law, he is unable to demonstrate the requisite injury to entitle

2  him to relief under 42 U.S.C. § 1983.  Defendants' motion for summary judgment should be

3  granted.

4         **Due to the exigencies of the court's calendar, the parties are alerted that the**

5  **objection period as set forth below will <u>NOT</u> be extended.**

6         Accordingly, IT IS ORDERED that plaintiff's motion to compel discovery, filed

7  on September 27, 2005, is denied.

8         IT IS RECOMMENDED that defendants' motion for summary judgment, filed on

9  October 14, 2005, be granted.

10         These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within ten days after service of the objections.  The parties are advised

16  that failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

18  DATED:   9/1/06

19                           /s/ Gregory G. Hollows

20                           _____
                            GREGORY G. HOLLOWS
                            UNITED STATES MAGISTRATE JUDGE

21  GGH:009
   will0864.ofr

22

23

24

25

26